UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JESSICA LEE PAGE,                         )
                                          )
          Plaintiff,                      )
                                          )
               v.                         )     Case No. 3:17-cv-30093-KAR
                                          )
NANCY A. BERRYHILL,                       )
Acting Commissioner of Social             )
Security Administration,                  )
                                          )
          Defendant.                      )


MEMORANDUM AND ORDER REGARDING PLAINTIFF'S MOTION FOR JUDGMENT
ON THE PLEADINGS AND DEFENDANT'S MOTION TO AFFIRM THE DECISION OF
THE COMMISSIONER
(Docket Nos. 12 & 17)

ROBERTSON, U.S.M.J.

     I.     INTRODUCTION

     Jessica Lee Page ("Plaintiff") brings this action pursuant to 42 U.S.C. § 1383(c)(3)

challenging the final decision of the Acting Commissioner of Social Security ("Commissioner")

denying her application for Supplemental Security Income ("SSI").  Plaintiff applied for SSI on

February 26, 2014, alleging a March 30, 2010 onset of disability, due to problems stemming

from a variety of impairments, including:  depression, anxiety, insomnia, protruding discs,

PTSD, lack of focus, and increased fatigue (A.R. at 115, 270). [1]  On March 1, 2016, the

Administrative Law Judge ("ALJ") found that Plaintiff was not disabled and denied her

application for SSI (id. at 56-68).  The Appeals Council denied review (id. at 1-6) and thus, the

ALJ's decision became the final decision of the Commissioner.  This appeal followed.

_____

[1] A copy of the Administrative Record (referred to herein as "A.R.") has been provided to the
court under seal (Dkt. No. 10).

Plaintiff appeals the Commissioner's denial of her claim on the ground that the decision

is not supported by "substantial evidence" under 42 U.S.C. § 405(g).  Pending before this court

are Plaintiff's motion for judgment on the pleadings requesting that the Commissioner's decision

be reversed or remanded for further proceedings (Dkt. No. 12), and the Commissioner's motion

for an order affirming the decision of the ALJ (Dkt. No. 17).  The parties have consented to this

court's jurisdiction (Dkt. No. 20).  *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.  For the reasons

stated below, the court will grant the Commissioner's motion for an order affirming the decision

and deny Plaintiff's motion.

II.     LEGAL STANDARDS

A.      Standard for Entitlement to Disability Insurance Benefits and
        Supplemental Security Income

In order to qualify for SSI, a claimant must demonstrate that she is disabled within the

meaning of the Social Security Act.[2]  A claimant is disabled for purposes of SSI if she "is unable

to engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than twelve months."  42 U.S.C. §

1382c(a)(3)(A).  A claimant is unable to engage in any substantial gainful activity when she

> is not only unable to do [her] previous work, but cannot, considering [her] age, education,
> and work experience, engage in any other kind of substantial gainful work which exists in
> the national economy, regardless of whether such work exists in the immediate area in
> which [s]he lives, or whether a specific job vacancy exists for [her], or whether [s]he
> would be hired if [s]he applied for work.

42 U.S.C. § 1382c(a)(3)(B).  The Commissioner evaluates a claimant's impairment under a five-

step sequential evaluation process set forth in the regulations promulgated by the Social Security

_____

[2] There is no challenge to Plaintiff's financial need for purposes of entitlement to SSI.  *See* 42
U.S.C. § 1381a.

Administration ("SSA").  *See* 20 C.F.R. § 416.920(a)(4)(i)-(v).  The hearing officer must determine:  (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a severe impairment; (3) whether the impairment meets or equals a listed impairment contained in Appendix 1 to the regulations; (4) whether the impairment prevents the claimant from performing previous relevant work; and (5) whether the impairment prevents the claimant from doing any work considering the claimant's age, education, and work experience. *See id; see also Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6-7 (1st Cir. 1982) (describing the five-step process).  If the hearing officer determines at any step of the evaluation that the claimant is or is not disabled, the analysis does not continue to the next step.  20 C.F.R. § 416.920(a)(4).

Before proceeding to steps four and five, the Commissioner must assess the claimant's Residual Functional Capacity ("RFC"), which the Commissioner uses at step four to determine whether the claimant can do past relevant work and at step five to determine if the claimant can adjust to other work.  *See id.*

> RFC is what an individual can still do despite his or her limitations.  RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities

Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *2 (July 2, 1996).

The claimant has the burden of proof through step four of the analysis, including the burden to demonstrate RFC.  *Flaherty v. Astrue*, Civil Action No. 11-11156-TSH, 2013 WL 4784419, at *8-9 (D. Mass. Sept. 5, 2013) (citing *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004)).  At step five, the Commissioner has the burden of showing the existence of jobs in

the national economy that the claimant can perform notwithstanding his or her restrictions and limitations. *Goodermote*, 690 F.2d at 7.

      B.     <u>Standard of Review</u>

      The district court may enter a judgment affirming, modifying, or reversing the final decision of the Commissioner, with or without remanding for rehearing. *See* 42 U.S.C. § 405(g). Judicial review "is limited to determining whether the ALJ used the proper legal standards and found facts upon the proper quantum of evidence." *Ward v. Comm'r of Soc. Sec.*, 211 F.3d 652, 655 (1st Cir. 2000). The court reviews questions of law *de novo*, but "the ALJ's findings shall be conclusive if they are supported by substantial evidence, and must be upheld 'if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion,' even if the record could also justify a different conclusion." *Applebee v. Berryhill*, No. 18-1510, 2018 WL 6266310, at *1 (1st Cir. Nov. 30, 2018) (quoting *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222-23 (1st Cir. 1981) (citations omitted)). "While 'substantial evidence' is 'more than a scintilla,' it certainly does not approach the preponderance-of-the-evidence standard normally found in civil cases." *Bath Iron Works Corp. v. U.S. Dep't of Labor*, 336 F.3d 51, 56 (1st Cir. 2003) (citing *Sprague v. Dir., Office of Workers' Comp. Programs*, *U.S. Dep't of Labor*, 688 F.2d 862, 865 (1st Cir. 1982)). In applying the substantial evidence standard, the court must be mindful that it is the province of the ALJ, and not the courts, to determine issues of credibility, resolve conflicts in the evidence, and draw conclusions from such evidence. *See Applebee,* 2018 WL 6266310, at *1. That said, the ALJ may not ignore evidence, misapply the law, or judge matters entrusted to experts. *See Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam).

      III.    <u>FACTS</u>

A.    Plaintiff's Background

Plaintiff was 26 years old when she applied for SSI on February 26, 2014 (A.R. at 454).

At the time of the hearing before the ALJ in January 2016, Plaintiff was 28 years old and lived

with her former fiancé's mother and her two-year old son (*id.* at 81-82, 93).  Plaintiff graduated

from high school and was certified to be a teacher's assistant (*id.* at 78).  Prior to the alleged

onset of disability on March 30, 2010, she had worked as a server, a production laborer doing

packaging and sealing, a concession stand worker in a movie theater, and a cashier (*id.* at 95-96,

278).  She was a substitute teacher during the school year that ended in June 2015 and worked

full-time for three months performing data entry as a temporary employee until November 6,

2015 (*id.* at 79-80).

B.    Plaintiff's Physical Condition

Plaintiff told the ALJ that she was unable to work because of pain in her back, right hip,

and both knees (*id.* at 65).  Because Plaintiff's challenge to the ALJ's decision mainly concerns

his assessment of the limitations caused by the condition of her right hip and, to a lesser extent

her back and knees, the court focuses on Plaintiff's medical history that is related to those

conditions.

The October 23, 2013 MRI of Plaintiff's lumbar spine revealed mild disc protrusions at

L4-L5 and L5-S1 "without mass effect" (*id.* at 855).  The facet joints and endplates were normal

and the bony canal and neural foramina were well-maintained (*id.* at 855-56).

On March 13, 2014, Plaintiff visited Nurse Practitioner ("N.P.") John Glogowski of

Western Mass. Physician Associates, Inc. complaining of pain in her back and left knee (*id.* at

398).  She reported that she had experienced "sharp" pain in her knee during the past month (*id.*).

It "intensifie[d] with any movement" and "continue[d] for over an hour after sitting" (*id.*).

Plaintiff's left knee was not swollen (*id.*). Palpation of the knee did not exacerbate the pain, crepitus was not noted with extension and flexion of the "LLE," but extension and flexion exacerbated the pain to Plaintiff's medial left knee (*id.*). N.P. Glogowski prescribed Percocet (*id.*).

Radiographs of Plaintiff's left knee on March 18, 2014 were "unremarkable" (*id.* at 857). There were no fractures or dislocations, patellar subluxation, knee joint effusion, or significant soft tissue swelling (*id.*).

N.P. Glogowski ordered an MRI of Plaintiff's left knee on April 3, 2014 (*id.* at 396). The MRI showed: no evidence of a discrete meniscal tear; an increased signal in the proximal PCL, which may have reflected "myxoid degeneration or sprain;" and a "small effusion" (*id.* at 859).

Noah Epstein, M.D. of HMC Orthopedic Surgeons examined Plaintiff's left knee on April 28, 2014 (*id.* at 499). Plaintiff denied "mechanical symptoms" (*id.*). Dr. Epstein noted that the MRI findings were "unremarkable" (*id.*). His examination of Plaintiff's left knee revealed "no joint line tenderness and no effusion" (*id.*). She had "tenderness palpation about the patellar tendon and a mildly positive lateral tilt test" (*id.*). Dr. Epstein injected Plaintiff's knee and recommended six weeks of physical therapy (*id.* at 499-500, 620).

Plaintiff was evaluated for physical therapy at Holyoke Medical Center on May 1, 2014 (*id.* at 620). Although she complained of pain in both knees, she was not limping and her knees were not significantly swollen (*id.* at 475, 620, 622). According to the records, Plaintiff attended physical therapy sessions on May 1, May 8, May 20, May 22, and June 10, and 17, 2014 (*id.* at 606, 608, 612, 614, 616, 618). She cancelled the session that was scheduled for June 5, 2014 (*id.* at 610). On June 10, 2014, Plaintiff reported that her knees had not hurt since her last session notwithstanding that fact that she had walked "a lot" (*id.* at 608). On June 17, 2014, Plaintiff

reported that negotiating stairs was easier (*id.* at 606). The records show that she had met her goals on that date, was going on vacation until about July 10, 2014, and would call the therapist when she returned (*id.*).

On July 29, 2014, Plaintiff saw N.P. Glogowski for pain in her back and "sharp" pain in her right hip (*id.* at 949). She reported experiencing pain in her hip every night since June and felling "popping" in her right hip when she walked (*id.*). N.P. Glogowski did not note popping or clicking when Plaintiff performed knee to chest raises and entire extremity raises (*id.*). However, walking produced popping and sharp pain in Plaintiff's right lateral hip (*id.*).

According to the x-ray report of July 31, 2014, there was "normal anatomic alignment and appearance of the osseous structures [of Plaintiff's right hip] without evidence of acute fracture or dislocation," "no significant degenerative change," and "no radiographically apparent soft tissue abnormality" (*id.* at 862). The MRI that was conducted on August 28, 2014 revealed mild to moderate greater trochanteric bursitis, an intact labrum, and "[m]inimal chondral irregularity and subchondral edema at the acetabular roof" (*id.* at 859-60). The hip joint was "otherwise normal" (*id.* at 860).

The record of Plaintiff's visit to Dr. Epstein on August 7, 2014 indicates: "[l]eft knee with full range of motion [and] no effusion. Mild joint line tenderness with a negative Steinmann's. [Plaintiff] is stable to varus and valgus stress [and] to anterior [and] posterior stress" (*id.* at 573). Plaintiff reported relief from pain and the ability to engage in many activities in which she previously had not participated (*id.*). Plaintiff was prescribed a knee brace on September 16, 2014 (*id.* at 1008).

On September 15, 2014, Dr. Epstein examined Plaintiff's right hip in response to her complaints of feeling pain when walking and "an occasional popping noise over the lateral

aspect of her hip" (*id.* at 571). The examination revealed "[f]ull painless range of motion of the hip with respect to the groin" and "tenderness to palpation over the greater trochanter" (*id.*). Dr. Epstein was not able to reproduce the "popping" (*id.*). There was no "IT band tightness distally" (*id.*). Dr. Epstein noted the MRI findings, diagnosed greater trochanteric bursitis, and recommended NSAIDs, physical therapy, and injections (*id.* at 571-72).

On November 18, 2014, Plaintiff visited N.P. Glogowski due to increased pain in her right hip, left knee, and lower back (*id.* at 943). N.P. Glogowski noted the two herniated discs in Plaintiff's lumbar spine that were revealed on the October 2013 MRI (*id.*). N.P. Glogowski recommended that Plaintiff follow up with her orthopedic specialist regarding her hip and knee pain and referred her to a chiropractor for further evaluation and treatment of her back (*id.*). Flexeril was prescribed (*id.*).

Plaintiff saw Dr. Epstein on December 4, 2014 with complaints of right hip and left knee pain (*id.* at 750). She indicated that physical therapy and NSAIDs had not relieved the pain (*id.*). An examination of Plaintiff's right hip revealed "tenderness to palpation over the greater trochanter" and "[n]o groin pain with range of motion" (*id.*). There was "retropatellar tenderness to palpation with no effusion" of the left knee with full range of motion and "negative Steinmann's" (*id.*). Dr. Epstein prescribed Naprosyn for the bursitis in Plaintiff's right hip and administered an injection to her left knee (*id.*). With regard to Plaintiff's knee, the doctor noted, "She's tried everything with mild improvement" (*id.*).

On March 2, 2015, N.P. Glogowski examined Plaintiff's back after she slipped on ice and fell down some stairs (*id.* at 937). She complained of discomfort in her mid-back (*id.*). N.P. Glogowski noted "slight tenderness . . . with palpation" of her upper thoracic back along with a

"[v]ery faint bruise" (*id.*).  During a follow-up visit on March 23, 2015, Plaintiff reported that Flexeril provided pain relief (*id.* at 935).

On April 30, 2015, Plaintiff visited Dr. Epstein for bilateral knee pain  (*id.* at 980).  The record of the visit indicated no effusion and full range of motion in her left knee (*id.*).  There was retropatellar tenderness to palpation without joint line symptoms (*id.*).  Dr. Epstein recommended that Plaintiff continue physical therapy and he administered an injection to her left knee to relieve the patellofemoral pain (*id.*).

On June 15, 2015, Dr. Epstein administered an injection to Plaintiff's right hip in response to her complaint of pain (*id.* at 977).  "She describe[d] pain at night and with extended activity that localize[d] to [her] right greater trochanter" (*id.*).  She indicated that the last injection provided relief (*id.*).  She also stated that she did not want to engage in physical therapy (*id.*).  Dr. Epstein noted no groin pain with range of motion and recommended exercise and NSAIDs (*id.*).

On July 24, 2015, Valley Chiropractic and Rehabilitation discharged Plaintiff from physical therapy for her back because she met all of her rehabilitation goals (*id.* at 783-85).  She reported minimal discomfort on that date and had no functional limitations (*id.* at 783).  All aspects of her lumbar range of motion – bending forward, backward, and to the right and left sides – were within normal limits (*id.*).  Forward flexion and extension of her trunk were "[s]trong and painless" (*id.*).  She did not complain of any radicular symptoms in either extremity and no sensory or vascular deficits were noted (*id.*).  Her bilateral extremity reflexes were equal and normal (*id.*).

Plaintiff was involved in a motor vehicle accident during the morning of October 29, 2015 and visited N.P. Glogowski later that day (*id.* at 927).  She complained of pain in her lower

back, both hips, and both knees (*id.*). Heel and toe ambulation exacerbated the pain in her lower back and lower thoracic back (*id.*). Palpation of her lumbar and lower thoracic spine and transverse lower back produced tenderness (*id.*). Her knees were not swollen (*id.*). There was minimal tenderness with palpation of her right upper patella and left medial patella (*id.*). Plaintiff was able to perform flexion and extension without difficulty or pain (*id.*). At a follow-up appointment on November 2, 2015, Plaintiff indicated that she was "very sore" but was able to walk "better" and to pick up her son (*id.* at 925). One week later on November 9, 2015, Plaintiff reported feeling better overall, but still was experiencing pain in both knees and in her lower back (*id.* at 923). N.P. Glogowski prescribed Capsaicin cream to relieve Plaintiff's knee pain (*id.*).

Plaintiff continued to complain of knee and back pain on December 14, 2015 (*id.* at 921). N.P. Glogowski referred her to physical therapy for her back (*id.*). The records that were available to the ALJ show that she attended physical therapy sessions at Valley Chiropractic and Rehabilitation to relieve low back pain and increase functional mobility on December 30, 2015 and January 8, 15, and 22, 2016 (*id.* at 994-96, 997, 999-1002, 1003-05). Her rehabilitation potential was assessed as being "good" (*id.* at 1004).

Plaintiff visited Dr. Epstein on January 4, 2016 complaining of pain in both knees and in her right hip (*id.* at 989). Dr. Epstein's examination of Plaintiff's right knee revealed "tenderness to palpation over the anterolateral [p]atellofemoral joint," "[n]o effusion" and "full range of motion" (*id.*). The greater trochanter of Plaintiff's right hip was tender to palpation (*id.*). Dr. Epstein injected both knees and her right hip (*id.* at 989-90). He "warned her of the systemic risks of infection" and recommended "no more than" three injections per year in a particular joint (*id.*).

C.    The RFC Assessments

1.    State Agency Reviewer

Elaine Hom, M.D., a nonexamining medical consultant, evaluated Plaintiff's RFC on October 20, 2014 (*id.* at 136-37).  Based on the doctor's review of Plaintiff's records, she opined that Plaintiff could:  (1) lift 20 pounds occasionally and 10 pounds frequently; (2) stand and/or walk and sit, with normal breaks, for about six hours in an eight-hour work day; and (3) push and/or pull without limitation (*id.* at 136).  Dr. Hom determined that Plaintiff was limited to occasionally climbing ramps, stairs, ladders, ropes, and scaffolds and balancing, stooping, crouching, and crawling (*id.* at 136-37).  The state agency reviewers determined that Plaintiff could perform light, unskilled jobs and, thus, was not disabled (*id.* at 139-40).

2.    N.P. Glogowski

a.    April 25, 2014

On April 25, 2014, N.P. Glogowski completed a Massachusetts DDS form requesting his opinion about Plaintiff's "ability, despite the functional limitations imposed by the impairment(s), to do work-related physical activities such as sitting, standing, walking, lifting, carrying, handling objects, hearing, speaking and traveling . . . " (*id.* at 470).  N.P. Glogowski referenced the October 2013 MRI of Plaintiff's spine and indicated that Plaintiff sprained her left knee on April 3, 2014 (*id.* at 467, 470).  N.P. Glogowski indicated:  "carrying anything over 20 lbs. is not easy, especially with lower back and knee pain.  Standing for a[n] extended period of time also is very difficult" (*id.* at 470).

b.    September 5, 2014

On September 5, 2014, N.P. Glogowski completed a form regarding Plaintiff's ability to perform "work-related activities on a day-to-day basis in a regular work setting" (*id.* at 567).

Based on Plaintiff's disc protrusions at L4-L5 and L5-S1 and the trochanteric bursitis and subchondral edema of her right hip, N.P. Glogowski indicated that Plaintiff could: lift and carry no more than 10 pounds; stand and walk for less than two hours, with normal breaks, during an eight hour day; sit for "5 minutes or so" before changing position; and stand for five minutes before changing position (*id.*). Every five minutes, she would have to walk around for ten minutes and she would need the opportunity to change, at will, from sitting or standing/walking (*id.*). In addition, N.P. Glogowski stated that Plaintiff would have to lie down every thirty minutes to two hours during an eight-hour shift (*id.*). N.P. Glogowski further indicated that Plaintiff could occasionally twist, stoop (bend), crouch and climb stairs and could never climb ladders (*id.* at 568). In addition, he opined that Plaintiff's ability to reach, push or pull, and handle objects were impaired by the pain in her lumbar area and right hip (*id.*). N.P. Glogowski opined that Plaintiff's impairments would cause her to be absent from work more than four days per month (*id.*).

        c.       September 29, 2014

On September 29, 2014, N.P. Glogowski completed the same form that he had completed twenty-four days earlier regarding Plaintiff's ability to perform work-related activities (*id.* at 637-38). His responses on September 29, 2014 mirrored those of September 5, 2014 with the following additions: his opinion regarding Plaintiff's ability to reach, push or pull, and perform gross manipulations were supported by the results of the MRIs of her lumbar region and right hip; and she was not able to walk more than ten minutes at a time or to stand for more than five to ten minutes (*id.* at 638).

        D.      <u>The ALJ Hearing</u>

Plaintiff and independent vocational expert ("VE") Larry Takki testified at the hearing before the ALJ on January 29, 2016 (*id.* at 74-75). According to Plaintiff she could "barely move, barely walk" due to the "sharp" pain that she experienced in her lower back, which had increased after her involvement in a motor vehicle accident in October 2015 (*id.* at 83-84). In addition, she began experiencing pain in her mid-back after the accident (*id.* at 85). Sitting, walking, bending, and lifting exacerbated the pain (*id.*). Plaintiff testified that the physical therapy that she was undergoing at the time of the hearing relieved the pain in her mid-back but not her lower back (*id.* at 84).

Plaintiff described the pain caused by the bursitis in her right hip as "constant" (*id.* at 85). During the winter, it felt like someone was stabbing her hip bone with a knife (*id.*). Sitting too long exacerbated the pain (*id.* at 86). According to Plaintiff, the injections that she received two or three times a year relieved the pain "sometimes" (*id.* at 85). Surgery had not been recommended (*id.* at 86).

Plaintiff testified that she almost constantly experienced pain in both knees (*id.* at 86-87). The pain in her right knee was "usually worse" than in her left knee (*id.* at 86). Plaintiff described the discomfort in her right knee as "a sharp pain that is right underneath the kneecap" (*id.*). The pain in her left knee was similar, but less intense than the pain in her right knee (*id.*). Bending her knees for a long period of time exacerbated the pain (*id.* at 88). She used knee braces when she shopped and had to walk "a lot" (*id.* at 87). Plaintiff reported that, before she began experiencing pain in her right knee, she had undergone physical therapy for her left knee, which "helped for probably two months and that was it" (*id.*). According to Plaintiff, the injections that she received two to three times a year relieved the pain a "little bit" (*id.*). Pain

medication did not relieve the pain completely (*id.* at 88). There was no plan for her to undergo knee surgery (*id.* at 87).

Plaintiff testified that no position provided relief from pain (*id.* at 88). She could sit for five to ten minutes before she had to stand and move around, she could not stand for more than thirty minutes, and could walk "maybe a block" before she had to stop (*id.* at 88-89). She had difficulty carrying her son who weighed thirty pounds and climbing the three flights of stairs to her home (*id.* at 89). Although she cooked and cleaned, she testified that it might take her three days to clean because she had to do it "little by little" and she was unable to cook a "good size meal" (*id.* at 93).

In order to determine the VE's opinion of whether jobs existed in the national economy, the ALJ asked the VE to assume that a person who had Plaintiff's age, education, and work experience, was limited to sedentary work with the following additional limitations: no climbing, kneeling, crawling, use of foot pedals, ambulation on rough terrain, heights, ladders, hazards, or dangerous machinery; no more than occasional stooping, bending, balancing, or twisting; only simple, routine, repetitive tasks which require concentration for two-hour time periods; and no more than occasional changes in the work routine (*id.* at 97). The VE opined that Plaintiff could not perform her past work, but could perform the jobs of address clerk, table worker, and touch up screener (*id.* at 97-98). These jobs would be also be available to a person who needed to alternate between sitting and standing every ten minutes (*id.* at 98-99). However, no jobs would be available to a person whose frequent rest breaks required her to be off task for fifteen to twenty percent of the work day or who would be absent from work for three or more days per month (*id.* at 99).

E.     The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ conducted the five-part analysis required by the regulations. *See* 20 C.F.R. § 416.920(a)(4)(i-v); *see also Goodermote*, 690 F.2d at 6-7. At the first step, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date of February 26, 2014 (A.R. at 58). *See* 20 C.F.R. § 416.971 *et seq.* At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative joint disease in the knee, degenerative disc disease, depression, anxiety, and rule out personality disorder (A.R. at 58). *See* 20 C.F.R. § 416.920(c). For purposes of step three, the ALJ reviewed Plaintiff's severe impairments and determined that they, either alone or in combination, did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (A.R. at 59). *See* 20 C.F.R. §§ 416.920(d), 416.925, 416.926.

Before proceeding to steps four and five, the ALJ assessed Plaintiff's RFC for use at step four to determine whether she could perform past relevant work and, if the analysis continued to step five, to determine if she could do other work. *See* 20 C.F.R. § 416.920(e). The ALJ determined that the Plaintiff had the RFC to perform sedentary work,[3]

> that avoids any climbing, kneeling or crawling as well as more than occasional balancing, stooping, twisting and bending. The claimant must avoid all exposure to hazards, unprotected heights or rough terrain. The claimant is limited to simple routine repetitive tasks. The claimant is limited to no more than occasional changes in the work routine.

---

[3] Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 416.967(a).

(A.R. at 61). At step four, the ALJ found that Plaintiff was unable to perform her past relevant work (*id.* at 67). *See* 20 C.F.R. § 416.965. However, considering Plaintiff's age, education, work experience, and RFC, Plaintiff could perform the jobs of address clerk, table worker, and touch up screener, which existed in the national and regional economies (A.R. at 68). *See* 20 C.F.R. §§ 416.969, 416.969a. Consequently, on March 1, 2016, the ALJ concluded that Plaintiff was not disabled since the date of her application, February 26, 2014 (A.R. at 68). *See* 20 C.F.R. § 416.920(g).

IV. <u>ANALYSIS</u>

Plaintiff alleges that the ALJ erred by: (1) failing to find that the bursitis in her right hip was a "severe" impairment at Stage Two of the sequential evaluation process and; (2) failing to assign controlling weight to the opinions of N.P. Glogowski, which were based on his assessment of the condition of Plaintiff's lower back, right hip, and knees. Each of Plaintiff's objections will be addressed in turn.

A. <u>To the extent the ALJ erred in failing to find the bursitis in Plaintiff's right hip to be a "severe" impairment at Step Two, the error was harmless because he found other severe impairments at Step Two and considered the limitations resulting from Plaintiff's right hip bursitis when crafting the RFC.</u>

The Commissioner appears to agree with Plaintiff that the ALJ erred at Step Two of the sequential evaluation process by failing to find trochanteric bursitis of Plaintiff's right hip to be a severe impairment (Dkt. No. 18 at 5). Plaintiff seeks remand for a re-assessment of her RFC that considers the impairment of her right hip (Dkt. No. 13 at 12-13). The Commissioner persuasively argues that the error at Step Two was harmless making remand unwarranted because the ALJ found other severe impairments at Step Two, considered Plaintiff's hip condition at subsequent stages, and included resulting limitations in the RFC.

At Step Two of the disability evaluation process, "the claimant has the burden of proving, through objective medical evidence, that her impairments are severe." *Teves v. McMahon,* 472 F. Supp. 2d 82, 86 (D. Mass. 2007). "Under the Social Security regulations, an impairment or combination of impairments is considered severe if it 'significantly limit[s] [the claimant's] physical or mental ability to do basic work activities.'" *Rascoe v. Comm'r of Soc. Sec.*, 103 F. Supp. 3d 169, 182 (D. Mass. 2015) (quoting *Teves*, 472 F. Supp. 2d at 86). As relevant here, basic work activities include the ability to perform "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." *López-González v. Comm'r of Soc. Sec.*, 59 F. Supp. 3d 372, 378 (D.P.R. 2014) (quoting 20 C.F.R. § 404.1521(b)). "[T]he plaintiff's burden at this stage 'is not onerous.'" *Rascoe,* 103 F. Supp. 3d at 182 (quoting *Teves*, 472 F. Supp. 2d at 87). "[T]he severity requirement is nothing more than 'a *de minimis* policy, designed to do no more than screen out groundless claims.'" *Id.* (quoting *McDonald v. Sec'y of Health & Human Servs.,* 795 F.2d 1118, 1124 (1st Cir. 1986)). The parties agree that Plaintiff met her burden at this stage concerning her right hip.

The analysis does not end here, however. It is well-settled that "a claimant cannot demonstrate harmful error at Step Two unless the failure to make severity findings ends the analysis." *White v. Colvin*, No. CA 14-171 S, 2015 WL 5012614, at *8 (D.R.I. Aug. 21, 2015). Here, "[t]he ALJ's step two error is not grounds for reversal . . . because he 'continued through the remaining steps and considered all of the claimant's impairments.'" *Corchado v. Astrue*, No. 12-CV-52-SM, 2013 WL 324022, at *4 (D.N.H. Jan. 29, 2013) (quoting *Syms v. Astrue,* Civil No. 10-cv-499-JD, 2011 WL 4017870, at *1 (D.N.H. Sept. 8, 2011)).

The ALJ considered Plaintiff's right hip impairment when crafting the RFC at Step Four. *See Majors v. Colvin,* Civil Action No. 12-40166-TSH, 2014 WL 551019, at *7 (D. Mass. Feb.

7, 2014) (any error in failing to recognize Plaintiff's spinal impairment at Step Two was harmless because "[t]he ALJ clearly considered [p]laintiff's spinal issues . . . when assessing her RFC" as shown by the ALJ's extensive discussion of the plaintiff's impairment and the ALJ's reliance on the MRI report). In making the RFC determination, the ALJ considered the records of Dr. Epstein, Plaintiff's "treating orthopedist" who saw Plaintiff "periodically" for treatment of her right hip pain (A.R. at 67). The ALJ's conclusion -- that Dr. Epstein's examinations did not reveal "any focal neurological deficits, anatomical deformities or loss of motion in either the spine or the joints in her lower extremities" – was supported by the medical records (*id.*). On September 15, 2014, December 4, 2014, and June 15, 2015, Dr. Epstein observed "[f]ull painless range of motion of the hip with respect to the groin" (*id.* at 571, 750, 977). Dr. Epstein diagnosed greater trochanteric bursitis and recommended conservative treatment: over-the-counter NSAIDs, physical therapy, and injections (*id.* at 572, 750, 977). In June 2015, Plaintiff reported that the prior injection provided pain relief and refused physical therapy to relieve her hip pain (*id.* at 977). Dr. Epstein's diagnosis remained unchanged on January 4, 2016, about two months before the ALJ issued his decision (*id.* at 68, 989). The ALJ noted that Plaintiff "has not had surgical intervention and she has not been referred to a pain clinic" (*id.* at 66). The ALJ also relied on the radiological studies, which showed a normal right hip with the exception of "mild to moderate greater trochanteric bursitis," and "minimal chondral irregularity and subchondral edema at the acetabular roof" (*id.* at 62-63, 571, 860).

The ALJ afforded "some weight" to the opinion of Dr. Hom, the nonexamining medical consultant (*id.* at 66). Dr. Hom considered Dr. Epstein's determination of trochanteric bursitis

with good range of motion and tenderness upon palpation and opined that Plaintiff could perform light work (*id.* at 137, 140).[4]

Although the ALJ found that Plaintiff experienced pain in her right hip, he followed the two-step analysis described in the regulations when discounting Plaintiff's claim that her right hip caused constant stabbing pain (*id.* at 65-66). *See* SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996).[5] The ALJ's determination was supported by the previously discussed MRI results, the information in Dr. Epstein's records, and the opinion of the state agency consultant. *See id.* In addition, the ALJ considered that Plaintiff's treatment was conservative and that she failed to follow Dr. Epstein's recommendation to pursue physical therapy to relieve the pain in her hip (A.R. at 63, 66, 571-72, 977). *See Applebee*, 2018 WL 6266310, at *1 (ALJ permissibly discounted plaintiff's credibility "in light of her . . . failure to follow a prescribed course of treatment"); *Flood v. Colvin*, No. 15-2030, 2016 WL 6500641, at *1 (1st Cir. Oct. 20, 2016) (ALJ's credibility determination was supported by evidence of claimant's "history of conservative treatment"); 20 C.F.R. § 416.929(c)(3). The ALJ also considered Plaintiff's testimony that she cared for her son in their third-floor walk-up apartment, shopped, cleaned, and prepared simple meals (A.R. at 66, 89-90, 92-93). *See Flood*, 2016 WL 6500641, at *1 (extent

---

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. § 416.967(b).

[5] ALJs were directed to replace SSR 96-7p with SSR 16-3p when making determinations and decisions regarding a claimant's symptoms on or after March 28, 2016. *See* SSR 16-3p, 2017 WL 5180304, at *1, *13 & n.27 (Oct. 25, 2017). Because the ALJ in the instant case issued his decision on March 1, 2016, SSR 96-7p applied (A.R. at 68).

of claimant's daily living activities were a factor in the ALJ's credibility determination); 20

C.F.R. § 416.929(c)(3)(i).

The RFC included limitations attributable to Plaintiff's hip condition. *See Majors,* 2014

WL 551019, at *7 (citing *Noel v. Astrue*, C.A. No. 11-cv-30037-MAP, 2012 WL 2862141, at *6

(D. Mass. July 10, 2012)). The ALJ rejected the state agency consultant's opinion that Plaintiff

could perform light work. Instead, the ALJ determined that Plaintiff could perform sedentary

work, which, by definition, required only occasional walking and standing (A.R. at 61). *See* 20

C.F.R. § 416.967(a). In addition, the RFC added functional limitations that reflected the

condition of Plaintiff's right hip (A.R. at 61). Specifically, Plaintiff was limited to sedentary jobs

that did not require climbing, kneeling, crawling, exposure to hazards, unprotected heights, or

exposure to rough terrain, and that involved only occasional balancing, stooping, twisting, and

bending (*id.*).

Because the ALJ considered the impact of Plaintiff's right hip trochanteric bursitis on her

RFC at Step Four, the ALJ's Step Two error was harmless. *See Lewis v. Astrue,* 498 F.3d 909,

911 (9th Cir. 2007) ("The decision reflects that the ALJ considered any limitations posed by the

bursitis at Step 4. As such, any error that the ALJ made in failing to include the bursitis at Step 2

was harmless."); *Perez v. Astrue*, Civil Action No. 11-30074-KPN, 2011 WL 6132547, at *4 (D.

Mass. Dec. 7, 2011) ("Any [Step Two] error . . . was harmless, however, as the ALJ explicitly

considered 'all symptoms,' both severe and non-severe, in assessing Plaintiff's [RFC] and there is

no indication that the ALJ failed to consider the cumulative effect of these impairments.").

B.    Substantial evidence supports the ALJ's decision to give "little weight" to the
       opinions of Nurse Practitioner Glogowski.

Plaintiff challenges the ALJ's decision to give "little weight" to N.P. Glogowski's April

2014 and September 2014 opinions regarding Plaintiff's ability to perform work-related activities

and contends that N.P. Glogowski's opinions are those of Plaintiff's "treating physician," which should be given controlling weight (Dkt. No. 13 at 13-20; A.R. at 66).[6] Although the ALJ considered N.P. Glogowski's opinions, N.P. Glogowski was not an acceptable medical source whose opinions were entitled to controlling weight and the ALJ's determination to afford them "little weight" was supported by substantial evidence.

Under the regulations that were effective at the time of Plaintiff's application, "[o]nly licensed physicians, licensed or certified psychologists, and other 'acceptable medical sources,' . . . qualif[ied] as 'treating sources,' whose opinions generally [were] entitled to more weight and, under certain circumstances, [could] be afforded controlling weight." *Barowsky v. Colvin*, Case No. 15-cv-30019-KAR, 2016 WL 634067, at *6 (D. Mass. Feb. 17, 2016) (quoting 20 C.F.R. §§ 404.1502, 404.1513).[7] As a nurse practitioner, N.P. Glogowski "was not an acceptable medical source whose opinion was entitled to the weight of a treating source opinion." *Raposo v. Berryhill*, Civil Action No. 17-cv-10308-ADB, 2018 WL 1524570, at *6 (D. Mass. Mar. 28, 2018) (citing *Reyes v. Berryhill*, Civil Action No. 16-10466-DJC, 2017 WL 3186637, at *8 (D. Mass. July 26, 2017)). *See Campagna v. Berryhill*, No. 2:16-cv-00521-JDL, 2017 WL 5037463, at *4 (D. Me. Nov. 3, 2017), *report and recommendation adopted by* Case No. 2:16-cv-521-JDL, 2018 WL 265568 (D. Me. Jan. 2, 2018) ("opinion of [nurse practitioner] was not entitled to

---

[6] Because N.P. Glogowski's opinions of September 5, 2014 and September 29, 2014 are substantially similar, his September 29, 2014 opinion is the basis for the discussion here (A.R. at 567-68, 637-38).

[7] *See* Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 82 Fed. Reg. 15,263 (Mar. 27, 2017) (policy interpretation ruling that nurse practitioners are not "acceptable medical sources" has been rescinded, but only effective "for claims filed on or after March 27, 2017" (emphasis added)); 20 C.F.R. § 416.902(a)(7) (nurse practitioner considered an acceptable medical source for claims filed "*on or after March 27, 2017*" (emphasis added)). Plaintiff filed her claim on February 26, 2014 (A.R. at 56).

controlling weight [as a matter of law] because a nurse practitioner is not a so-called 'acceptable medical source'") (quoting 20 C.F.R. §§ 404.1513(a). 416.913(a)).

"Rather than a treating source, N.P. [Glogowski] was an 'other' medical source." *Raposo*, 2018 WL 1524570, at *7 (quoting *Maio v. Astrue*, Civil No. 10-cv-235-JL, 2011 WL 2199845, at *4 (D.N.H. June 7, 2011)). "An 'other source,' such as a nurse practitioner . . . cannot establish the existence of a medically determinable impairment, though such a source may provide insight into the severity of an impairment, including its impact on the individual's ability to function." *Oviedo v. Colvin*, C.A. No. 15-344S, 2016 WL 5794885, at *7 (D.R.I. Sept. 2, 2016), *report and recommendation adopted by* C.A. No. 15-344 S, 2016 WL 5793653 (D.R.I. Oct. 4, 2016).

N.P. Glogowski's April 2014 opinion considered the condition of Plaintiff's back and left knee on her ability to perform work related physical activity (A.R. at 467, 470). He opined that Plaintiff would have difficulty lifting over twenty pounds and standing for an extended period of time (*id.* at 47).

N.P. Glogowski's September 2014 opinions stated that they were based on Plaintiff's lumbar disc protrusions at L4-L5 and L5-S1 and the trochanteric bursitis and "subchondral edema" of her right hip (*id.* at 567-68, 637-38). N.P. Glogowski opined that, due to these conditions, Plaintiff could sit for five minutes before changing position, could stand or walk for no more than ten minutes at a time, and must walk around for ten minutes every five minutes (*id.* at 637-38). She needed the opportunity to "shift, at will, from sitting or standing/walking" (*id.* at 637). According to N.P. Glogowski, Plaintiff would have to lie down about every half hour to every two hours (*id.*). He also indicated that Plaintiff's abilities to twist, stoop, crouch, climb stairs, reach, handle items, and push/pull were limited (*id.* at 638).

The ALJ afforded "little weight" to N.P. Glogowski's opinions regarding Plaintiff's functional limitations because they were not supported by "[t]he weight of the evidence, including Dr. Epstein's physical exam findings and the radiographic imaging studies" (*id.* at 66). "An administrative law judge need not provide 'good reasons' for discounting the opinion of a 'non-acceptable' treating source, as he or she must if addressing the opinion of an 'acceptable' treating source." *Guest v. Berryhill*, No. 2:16-cv-00228-JHR, 2017 WL 2414468, at *7 (D. Me. June 2, 2017). *See Johnson v. Colvin*, 204 F. Supp. 3d 396, 410 (D. Mass. 2016) ("The opinions of other medical sources are not entitled to controlling weight and an administrative law judge is not required to provide 'good reasons' for the weight assigned to such opinions . . . ."). The ALJ "need only 'explain the weight given to opinions from these "other sources" or otherwise ensure that the discussion of the evidence . . . allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.'" *Guest*, 2017 WL 2414468, at *7 (quoting SSR 06-3p, 2006 WL 2329939, at *6 (Aug. 9, 2006)). The ALJ complied with this requirement. *See King v. Astrue,* Civil No. 09-337-P-H, 2010 WL 4457447, at *4 (D. Me. Oct. 31, 2010), *report and recommendation adopted by* Civil No. 09-337-P-H, 2010 WL 4823921 (D. Me. Nov. 22, 2010) ("The administrative law judge fulfilled applicable requirements with respect to the [nurse practitioner's opinion], expressly considering it, explaining the weight afforded to it, and providing adequate discussion to enable a subsequent reviewer to follow his reasoning.").

In light of Plaintiff's failure to contest the ALJ's decision to afford little weight to N.P. Glogowski's opinion regarding the physical limitations imposed by the condition of her back

(Dkt. No. 13 at 13-20), [8] the remaining question is whether the ALJ's decision to afford little weight to N.P. Glogowski's opinions regarding Plaintiff's physical limitations due to the condition of her right hip and left knee are supported by the record as a whole (A.R. at 61-66). They were so supported. N.P. Glogowski's opinions were inconsistent with the record evidence upon which the ALJ relied. *See* SSR 06-3p, 2006 WL 2329939, at *4 (whether an opinion is consistent with other evidence is one factor considered in weighing the opinion of a source who is not an "acceptable medical source"). Specifically, N.P. Glogowski's opinion regarding the limitations imposed by the bursitis in Plaintiff's right hip was at odds with the observations of Dr. Epstein, a specialist in orthopedics, the radiological studies, and the opinion of the state agency consultant, which were previously discussed.

The record also supported the ALJ's rejection of N.P. Glogowski's opinion regarding Plaintiff's ability to perform work-related activity due to her knee condition as being inconsistent with the medical reports and radiological findings. *See* 20 C.F.R. § 416.927(c)(4), (f)(1). Dr. Epstein deemed the MRI of Plaintiff's left knee "unremarkable" (A.R. at 499, 858-59). On August 7, 2014, Plaintiff's knee was not swollen and was stable to varus, valgus, anterior, and posterior stress (*id.* at 573). Dr. Epstein's notes reflect that Plaintiff had full range of motion in her left knee in August and December 2014, April 2015, and January 2016 (*id.* at 573, 750, 980, 989). The physical therapy records of May and June 2014 indicated that the treatments relieved

---

[8] To the extent N.P. Glogowski's opinion was based on Plaintiff's lumbar condition, it was contradicted by the MRI showing mild disc protrusions at L4-L5 and L5-S1 "without mass effect" (A.R. at 855). The facet joints, bony canal, neural foramina, and endplates were normal (*id.*). Plaintiff was discharged from physical therapy for her back in July 2015 because she had reached all her goals and had no functional limitations (*id.* at 783-85). Plaintiff failed to show that any impairment due to the October 2015 motor vehicle accident qualified as a medically determinable impairment that was expected to last for a continuous period of more than twelve months. *See* 42 U.S.C. § 1382c(a)(3)(A).

Plaintiff's knee pain even when she walked "a lot" (*id.* at 573, 606, 608).  Although Plaintiff was supposed to contact the therapist after her (Plaintiff's) vacation in July 2014, there are no records showing that she engaged in therapy for her knee after that date (*id.* at 608).  Moreover, N.P. Glogowski's opinion regarding Plaintiff's inability to lift more then twenty pounds and to stand for extended periods of time were reflected in the RFC that limited Plaintiff to sedentary work (*id.* at 61, 470).  *See* 20 C.F.R. § 416.967(a).

Because the ALJ's decision regarding N.P. Glogowski's opinions is supported by substantial evidence, Plaintiff presents no basis for the court to order a remand.  *See* SSR 06-3p, 2006 WL 2329939, at *4; *see also Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996) ("The Secretary's findings of fact are conclusive if supported by substantial evidence.").

V.  CONCLUSION

For the above-stated reasons, Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 12) is DENIED and the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Dkt. No. 17) is GRANTED.  The case will be closed.

It is so ordered.

Dated:  December 27, 2018                    /s/ Katherine A. Robertson
                                            KATHERINE A. ROBERTSON
                                            U.S. MAGISTRATE JUDGE